UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| TERESA ELAINE CROMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 16-cv-374-JMH |
| ) | |
| NANCY A. BERRYHILL, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY,[1] ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. | |

\*\*\*

This matter is before the Court upon cross motions for summary judgment [DEs 10 and 13]. The plaintiff has also filed a reply memorandum. For the reasons stated below, this action will be remanded to the Acting Commissioner for further consideration of Plaintiff's ability to perform substantial gainful activity on a sustained basis.

The Court's review of the Acting Commissioner's decision concerning disability upon reconsideration is limited to an inquiry into whether or not the findings of the Acting Commissioner are supported by substantial evidence, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). Moreover, this Court's review is limited "to the particular

---

[1] The caption of this matter is amended to reflect that Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin in that role.

points that [the claimant] appears to raise in [his] brief on appeal." *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

Plaintiff filed an application for disability insurance benefits (DIB) in August 2013, alleging that she became disabled in January 2012, due to a variety of physical and mental impairments, particularly bipolar disorder (Transcript of Administrative Record (Tr.) 170-82, 221). After early administrative denials (Tr. 77-105, 107-10, 112-18) and a *de novo* hearing (Tr. 27-72), an ALJ denied her claim in July 2015 (Tr. 9-26). The agency's Appeals Council subsequently declined Plaintiff's request for review (Tr. 1-6), making the ALJ's decision the final agency decision for purposes of judicial review (Tr. 1-6), making the ALJ's decision the final agency decision for purposes of judicial review. *See* 20 C.F.R. § 404.981, 422.210(a) (2016). This appeal followed.

Plaintiff argues that the Acting Commissioner's final decision should be reversed (or at least remanded) for two reasons. First, she asserts the ALJ erroneously assigned "no weight" to the medical opinions of the treating physician, Dr. Stephen Lamb, a psychiatrist who had treated the plaintiff for 14 years, in violation of the treating physician rule. This case is on all fours with *Gayheart v. Commissioner*, 710 F.3d 365 (6th Cir. 2013), the leading Sixth Circuit case on how an ALJ

2

must weigh medical opinions and on the treating physician rule. Second, she contends the ALJ refused to take testimony from the plaintiff's attending psychiatrist, Dr. Lamb, who attended the hearing and wanted to testify, when it was clear that Dr. Lamb's testimony would have been helpful to the ALJ's understanding of the plaintiff's medical condition. Given these two issues, the Court finds it necessary to focus on Plaintiff's mental impairments.

Plaintiff was 48 years old on her alleged onset date (Tr. 176). She has a high school education (Tr. 222), and past relevant work as a material handler/team member at an auto plant (Tr. 68-69, 223).

Plaintiff had a long history of mental health treatment with Stephen Lamb, M.D. (Tr. 575-76, 485-517, 539-52). In late 2012, Plaintiff started having violent thoughts about a coworker (Tr. 63, 64, 345), and in January 2013, Plaintiff told Dr. Lamb that she was very upset and agitated and unable to cope with work. She wanted to go on disability (Tr. 512). Plaintiff subsequently received short-term and long-term disability from her job (Tr. 67, 345).

Dr. Lamb's subsequent treatment notes reflected Plaintiff's symptoms waxed and waned over time (Tr. 495-511), particularly around the time period after her best friend died in a car accident (Tr. 502-03), but she remained active. For instance,

3

she continued regularly attending her sobriety group meetings (Tr. 267, 500, 503, 504, 505, 508); gave rides to friends (Tr. 53, 543); volunteered (Tr. 546); went outside (Tr. 235, 248, 543, 546); and spent time with children (Tr. 497, 500, 501). Plaintiff also regularly attended counseling sessions with social worker, Deborah Spicer (Tr. 306-43, 460-84).

Both Dr. Lamb and Ms. Spicer provided letters and completed forms regarding Plaintiff's limitations. In July 2013, Ms. Spicer completed forms stating that Plaintiff could not do her job on the assembly line at the Toyota plant (Tr. 319). In August 2014, Dr. Lamb completed a form in which he opined that Plaintiff was moderately limited in remembering instructions and work-like procedures; handling out very short and simple instructions; maintaining attention and concentration for extended periods; sustaining an ordinary routine; working in coordination with others; making simple work-related decisions; interacting with the general public and getting along with coworkers and peers; maintaining socially appropriate behavior; remaining aware of normal hazards; and set realistic goals. Dr. Lamb stated Plaintiff was markedly limited in handling detailed instructions, completing a normal workday and workweek, handling supervision, and responding appropriately to changes in the work setting (Tr. 492-94). Dr. Lamb also opined that Plaintiff had no restrictions of activities of daily living; moderate

4

difficulties in maintaining social functioning; moderate deficiencies in concentration, persistence, and pace; and four or more episodes of decompensation, each of extended duration (Tr. 489).

That same month, Ms. Spicer completed the same form also assessing multiple marked and moderate limitations in Plaintiff's mental functioning (Tr. 457-59). She also wrote a letter stating Plaintiff was compliant with treatment, but had a significant struggle to achieve and maintain a consistent euthymic mood. She stated that although Plaintiff had improved, her symptoms continued and affected the quality of her interpersonal relationships. Ms. Spicer stated that Plaintiff's ability to cope with work was significantly compromised and she would likely have significant difficulties. She recommended "continued disability" (Tr. 456).

In a letter dated October 8, 2014, Dr. Lamb discussed how Plaintiff's symptoms wax and wane (Tr. 486). He stated that Plaintiff's course seemed to be one of brief improvements on medicine followed by a marked worsening, which had prevented her from doing any meaningful work (Tr. 487). The following month, Dr. Lamb completed another form in which he opined that Plaintiff had poor or no ability to relate to co-workers, deal with the public and work stresses, interact with supervisors, maintain attention and concentration, and demonstrate

5

reliability. He estimated that Plaintiff would miss four or more days of work every month (Tr. 519). In December 2014, Ms. Spicer completed the same form opining Plaintiff had poor or no ability in these same areas as well as in the area of using judgment (Tr. 520).

Dr. Lamb authored another letter on June 22, 2015, in which he stated that he had been treating Plaintiff for depression, anxiety, and bipolar disorder since 2001, and during that time, he had tried many different medications with varying degrees of success (Tr. 575). He noted that Plaintiff's emotional problems worsened in late 2012, and he took her off work in early 2013, as she was potentially a danger to herself and others and not able to perform her job (Tr. 575-76). Dr. Lamb opined that Plaintiff meets Listing 12.04 as her symptoms caused marked difficulties in maintaining concentration, persistence or pace and repeated episodes of decompensation, along with a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands would cause her to decompensate (Tr. 575). Dr. Lamb noted that he had suggested Plaintiff check herself into a psychiatric hospital in February 2015, because of the severity of her condition at that time. He concluded that Plaintiff had been unable to perform her job since January 2013 (Tr. 576).

6

Plaintiff also underwent a consultative psychological examination in December 2013, with Edd Easton-Hogg, Psy.D. Plaintiff said she had been receiving mental health treatment for many years, for depression, anxiety, stress, and paranoia. She stated she had a history of substance abuse and attended a religious based recovery program (Tr. 345). Plaintiff reported she was able to manage bills and shop. She enjoyed television, church, and the computer and said that she had appropriate social contact on a routine basis. On examination, Plaintiff was well groomed, cooperative, and fully oriented and had normal posture and gait. She could spell the word "world" backward and had average ability to repeat digits forward and backward. Plaintiff was able to compute basic math calculations and she had normal attention to task and concentration with no memory deficits. Plaintiff had normal eye contact, responsive facial expressions, appropriate affect, a neutral mood, normal speech, and logically organized thoughts. Dr. Easton-Hogg estimated Plaintiff had average intelligence and found she had intact abstract thoughts Dr. Easton-Hogg estimated Plaintiff had average intelligence and found she had intact abstract thought processes, good judgment, adequate insight, and appropriate decision-making skills. Plaintiff's coping abilities were normal and she displayed no skill deficits (Tr. 346).

Dr. Easton-Hogg assessed bipolar II disorder and substance abuse in remission with a GAF score of 60. He opined that Plaintiff's ability to handle instructions and sustain attention and concentration toward the performance of simple repetitive tasks, and respond appropriately to supervisors and coworkers appeared slightly affected. He thought Plaintiff's ability to participate in basic repetitive work duties was moderately affected (Tr. 347).

During the administrative proceedings, state agency psychologist Jane Brake, Ph.D., reviewed Plaintiff's record and opined Plaintiff had mild restriction of activities of daily living and maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace (Tr. 84). She went on to assess Plaintiff's mental functioning and opined that she could understand, recall and carry out simple familiar instructions and procedures requiring brief learning periods; concentrate and persist at familiar tasks requiring some independent judgment and involving minimal variations in two hour segments; relate adequately to others; and adapt to situational conditions and changes with reasonable support and structure (Tr. 87). John Thibodeau, Ph.D., another state agency psychologist opined Plaintiff could remember, understand, and carry out simple instructions; maintain attendance, be punctual, and sustain ordinary routines; work in

coordination with others, interact with the general public, get along with coworkers, and handle supervision; make simple work related decisions; and be aware of normal hazards (Tr. 103).

After carefully considering the entire record, the ALJ concluded that Plaintiff's impairments, though limiting, would not prevent her from performing work at all exertional levels within the following parameters:

- can remember locations and work-like procedures, remember and understand very short and simple instructions, maintain attendance, perform activities within a schedule, and be punctual within customary tolerances
- can sustain an ordinary routine without supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, ask simple questions and request assistance, and interact appropriately with the general public;
- can accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and be socially appropriate and adhere to basic standards of neatness and cleanliness;
- can be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others (Tr. 18). Based on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform not only her past work as a team member, but also jobs existing in the national economy in significant numbers, including order picker and machine feeder

(Tr. 20-21). Thus, he found Plaintiff not disabled (Tr. 21).

This case is on all fours with *Gayheart v. Commissioner*, 710 F.3d 365 (6th Cir. 2013). The Acting Commissioner did not

9

address whether, as in *Gayheart*, there is any substantial evidence in the record that Plaintiff could perform ordinary activities on a *sustained* basis, which is how the functional limitations of mental impairments are assessed. *See* 20 C.F.R. § 404.1520a(c)(2); 20 C.F.R. Part 404, Subpart P, Appendix 1, at 12.00 ("Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.").

*Gayheart* involved a mentally ill patient whose long-term treating psychiatrist found him to have bipolar disorder, generalized anxiety disorder and depression, with "poor concentration" and "poor abilities to handle simple and routine tasks in a work setting, to interact socially, and to adapt to change." *Id.*, at 369. Here, Dr. Lamb, who has seen Plaintiff about 10 times per year since 2001, as well as consulted with her via telephone, explained that the "diagnoses have continued to be anxiety, depression and bipolar [disorder]." (Tr. 575). Dr. Lamb has also noted Plaintiff's poor ability to concentrate, relate to co-workers, deal with work stresses and demonstrate reliability. (Tr. 519 and 575-76).

In both this and the *Gayheart* case, the ALJ gave little or no weight to the opinion of the treating physician and instead relied on non-treating sources. For example, ALJ Kayser gave "no weight" to Dr. Lamb's opinion. (Tr. 19). In *Gayheart*, it

10

was noted that the ALJ had given "little weight" to the treating physician.

*Gayheart* expounded on the "treating physician rule," and held that the rule applies unless the ALJ gives "good reasons" for why the treating physician's "opinions fail to meet either prong of [the] test" set forth at 20 C.F.R. § 404.1527(c)(2). 710 F.3d at 376. In other words, the ALJ must give "good reasons" why the opinions are not well-supported by any objective findings and a good reason why the opinions are "inconsistent with the other substantial evidence" in the record. *Id.*

ALJ Kayser's analysis did not meet this standard. He simply said that he:

> As for the opinion evidence, the [ALJ] gives no weight to Dr. Lamb's evaluation because his opinion is contradicted by his own treatment notes. . . . The [ALJ] reasonably concludes an individual with poor or no useful ability to function in multiple areas as asserted by these providers should be sent to a mental inpatient facility as they would be a danger to themselves and to others.[2]

---

[2] The ALJ, of course, is clearly not qualified to opine about who "should be sent to a mental inpatient facility." The comment is out of bounds as there is certainly a middle ground between a person who does not need to be institutionalized, and one who is unable to work because of mental illness. Plaintiff is in that middle ground, in the estimate of the professionals who have long treated her.

11

(Tr. 19). The ALJ's opinion, then, hinges on the content of Dr. Lamb's "treatment notes," and specifically whether they contradict his opinion of Plaintiff's limitations.

The ALJ in his opinion summarized those "treatment notes," and apparently believed that they show sufficiently extensive activity by Plaintiff so as to vitiate Dr. Lamb's opinions about his patient's functional ability. (Tr. 16). The evidence set above leads to the conclusion that the ALJ "cherry picked" isolated pieces of these treatment records, while ignoring any reference in them—even records of the same date as the cherry-picked pieces—to reach his conclusion concerning Plaintiff's continued mental health problems. This type of analysis was found to be faulty in *Gayheart* as the record does not show that Plaintiff is capable of doing the activities the ALJ found she was capable of doing on a sustained basis. 710 F.3d at 377.

Accordingly, **IT IS ORDERED** that Plaintiff's motion for summary judgment [DE 10] is **GRANTED**, in part, and that the Acting Commissioner's motion for summary judgment is **DENIED**.

**IT FURTHER ORDERED** that this action be reversed and remanded to the Acting Commissioner for further consideration of Plaintiff's ability to perform substantial gainful activity on a sustained basis.

This the 24th day of July, 2017.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge